UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER B. HOPKINS AND SANDY HOPKINS,<br><br>            Plaintiffs,<br><br>    v.<br><br>FORD MOTOR COMPANY; and DOES 1 through 10, inclusive,<br><br>            Defendants. | No.  2:25-cv-00030-JAM-AC<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND** |

This matter is before the Court on Plaintiffs Roger and Sandy Hopkins' motion to remand.  ECF No. 13-1, Plaintiffs' Memorandum of Points and Authorities ("Mot.").  Defendant Ford Motor Company filed an opposition (ECF No. 16 ("Opp'n")); Plaintiffs did not reply.  For the following reasons, Plaintiffs' motion is denied.[1]

I.   BACKGROUND

In 2024, Plaintiffs initiated a lawsuit in Yolo County Superior Court, arising out of their 2018 purchase of a Ford Explorer (the "Subject Vehicle"), which they claim is defective. See generally Mot. at 1-2; Opp'n at 2.  Defendant then removed

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g); see also ECF No. 17.

1

1  the matter to this Court, based on 28 U.S.C. §§ 1332, 1441, and
2  1446, alleging the parties were diverse and the amount in
3  controversy exceeded $75,000.  ECF 1.  Specifically, Defendant
4  alleged the Plaintiffs are California citizens and the Defendant
5  is a Delaware citizen.  Id.  Defendant also averred the removal
6  was timely, because it was made within 30 days of the dismissal
7  of other defendants that shared California citizenship.  Id.

##                              II.    OPINION

### A.   Legal Standard

10    Federal district courts have subject matter jurisdiction
11 over civil actions between parties with diverse citizenship
12 where "the amount in controversy exceeds the sum of or value of
13 $75,000, exclusive of interests and costs."  28 U.S.C.
14 § 1332(a).  Such an action may be removed to federal court under
15 28 U.S.C. § 1441(a).  It is well-established that "[r]emoval
16 statutes are strictly construed, and any doubt about the right
17 of removal requires resolution in favor of remand.  This rule of
18 narrow construction both recognizes the limited jurisdiction of
19 federal courts and protect[s] the jurisdiction of state courts."
20 Casola v. Dexcom, Inc., 98 F.4th 947, 954 (9th Cir. 2024)
21 (citing and quoting Moore-Thomas v. Alaska Airlines, Inc., 553
22 F.3d 1241, 1244 (9th Cir. 2009) and Harris v. Bankers Life &
23 Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005)) (internal citations
24 and quotations removed).

25    "The presumption against removal means that the defendant
26 always has the burden of establishing that removal is proper."
27 Casola, 98 F.3d at 954 (quoting Moore-Thomas, 553 F.3d at 1244)
28 (quotations removed).  Indeed, when removal is challenged based

on whether the amount in controversy exceeds $75,000, "'the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold," unless it is clear from the face of the state court complaint. Urbino v. Orkin Services of California, Inc., 726 F.3d 1118, 1121-22 (9th Cir. 2013) (quoting Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)).  The Ninth Circuit defines the "amount in controversy as the amount at stake in the underlying litigation, [that is,] any result of the litigation, excluding interests and costs, that entails a payment by the defendant.  This amount includes, *inter alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648-49 (9th Cir. 2016) (citing and quoting Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 662 (9th Cir. 2005) and Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007) (internal quotations, citations, and brackets removed)).

In assessing whether the defendant has met its burden, a court "may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 416 (9th Cir. 2018) (citing Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)).

B.   Analysis

Plaintiffs contest jurisdiction by claiming Defendant did not establish the amount in controversy exceeds $75,000. See

3

generally Mot. As correctly noted by Defendant, Plaintiffs do not dispute this matter was timely removed, nor do they dispute complete diversity. Opp'n at 2.

The parties agree it is not apparent from the face of the complaint that the amount in controversy exceeds $75,000 (see Mot. at 5-6 and Opp'n at 4); accordingly, Defendant bears the burden of establishing by a preponderance that the amount in controversy exceeds $75,000. See Urbino, 726 F.3d 1118. Only Defendant has presented evidence for the Court to consider in determining the amount in controversy here. See ECF No. 16-1- 16-5.

### 1. Actual Damages

In the body of their complaint, Plaintiffs seek damages under the Song-Beverly Act, including "the entire contract price," "reimbursement of the price paid for the vehicle," offset by the Plaintiffs use prior to the alleged problems manifesting, "any 'cover' damages," and incidental, consequential, and general damages. Opp'n, Exh. A ("Compl.") ¶¶ 17-22, 35. Plaintiffs also sue Defendant for "Fraudulent Inducement-Concealment," and repeat in their prayer for relief requests for "general, special, and [] actual damages," "restitution," and "consequential and incidental damages." Id. ¶¶ 50-62 and pg. 11-12.

Defendant provides the Retail Installment Sales Contract ("RISC") for the Subject Vehicle. See Opp'n, Exh. B. Defendant also provides a declaration; this evidence demonstrates the purchase price of the subject vehicle was $80,176.19 without financing, $84,873.84 with. Id. Defendant submits evidence

from its "Analytical Warranty System [] Standard Claims List Report," and a corresponding repair order.  Id., Exhs. C and D. Using this evidence, Defendant offers a detailed analysis of a proposed mileage offset which provides a more favorable calculation of actual damages for the Plaintiffs.  See Opp'n at 3-4, 6-8.  Since the first repair occurred after Plaintiffs drove approximately 28,986 miles, according to the Defendant's calculated Song-Beverly offset, this mileage, divided by 120,000 and multiplied by the purchase price, results in a $20,501.28 deduction, totaling $64,372.56 in actual damages.  Id.  Without the financing included in the purchase price, the deduction is $19,366.56, totaling $60,809.63 in actual damages.  Id. at 7-8.

    Plaintiffs claim these numbers are "purely speculative," "lack a supporting evidentiary basis," and arbitrarily self-serving.  Mot. at 8-10.  The Court disagrees.  Plaintiffs have not provided any alternative proposal for the Court regarding their actual damages.  Plaintiffs did not file a reply, nor did they present any evidence for the Court to consider otherwise. The evidence and calculations before the Court are uncontroverted.  Accord Carrington Stonemasons, Inc. v. Ford Motor Company, No. 24-cv-00080, 2024 WL 1745038 at *3 (N.D. Cal Apr. 22, 2024) ("Because [Plaintiff] has not filed a reply, [Defendant]'s calculation of the use offset and actual damages is undisputed.").

    Although Plaintiffs rely on a number of cases to support their argument that Defendant failed to meet its evidentiary burden here, they are distinguishable.  See Mot. at 5-11.  For example, in Steeg, the defendant simply relied on the

5

allegations in the complaint and the vehicle's MSRP (manufacturer's suggested retail price). Steeg v. Ford Motor Company, No. 19-cv-05833, 2020 WL 2121508 (N.D. Cal. May 5, 2020). The defendant did not present other evidence, including the actual sales price, and the court found defendant failed to demonstrate that the amount in controversy exceeded $75,000. Id. Similarly, defendants in Schneider and Limon-Gonzalez relied on the claimed damages in the plaintiffs' complaints of at least $25,000, argued this number would be doubled if civil penalties were included, and made general claims about attorneys' fees. See Schneider v. Ford Motor Co., 441 F. Supp. 3d 909 (N.D. Cal. Mar. 2, 2020); Limon-Gonzalez v. Kia Motos America, Inc., No. CV 20-4381, 2020 WL 3790838 (C.D. Cal. Jul. 7, 2020). Both courts granted plaintiffs' motions to remand because defendants failed to meet their burden. Id. Unlike these cases, and the many others cited by Plaintiffs, Defendant presented evidence of the actual damages at issue here, supported by the RISC, Analytical Warranty System Standard Claims List Report, and a repair order; Defendant did not simply rely on the allegations in Plaintiffs' complaint and make vague claims about possible damages. Cf. Edwards v. Jaguar Land Rover N. Am. LLC, No. 21-cv-05061, 2022 WL 854515 (N.D. Cal. Mar. 23, 2022) (motion to remand granted because defendant relied on allegations in complaint, civil penalties doubling the claimed amount of damages and general arguments about attorneys' fees, and did not present evidence to meet its burden); Echemendia v. Subaru of America, Inc., No. 20-cv-09243, 2020 WL 7311348 (C.D. Cal. Dec. 11, 2020) (defendant provided sales contract, but no

other evidence or analysis to "allow the Court to reliably estimate actual damages"); Chajon v. Ford Motor Company, No. 2:18-cv-10533, 2019 WL 994019 (C.D. Cal., Jan. 8, 2019) (defendant failed to meet its burden establishing requisite amount in controversy because it relied on MSRP, did not provide other evidence or an offset calculation, and speculated about penalties and attorneys' fees).

"District courts within the Ninth Circuit disagree whether . . . the 'use offset' or the 'mileage offset[]' should be considered when determining the amount in controversy for purposes of jurisdiction." Carrington, 2024 WL 1745038 at *2. Without the offset, Defendant has demonstrated by a preponderance that the amount in controversy exceeds $75,000 based on the RISC, containing the actual purchase price, and Plaintiffs request for actual damages to include "the entire contract price," under the Song-Beverly Act, alone.

Considering the mileage offset and assuming the most favorable calculation to the Plaintiffs, the Plaintiffs baseline damages would still be at least $60,809.63. See Opp'n at 8. Accordingly, the Court turns to the parties' arguments regarding penalties.

### 2. Civil Penalties

Plaintiffs seek a statutory civil penalty of twice Plaintiffs' actual damages under the Song-Beverly Act, punitive damages, prejudgment interest, costs, and attorneys' fees. See Compl. at pg. 11-12. The parties disagree about the appropriate way to include and calculate civil penalties here, citing a number of cases supporting their respective positions. See Mot.

at 11-14; Opp'n at 8-10.  Plaintiffs argue Defendant's assumption that Plaintiffs will recover the penalty authorized by the Song-Beverly act is unsupported; since Defendant has failed to meet its burden, which Plaintiffs claim requires proof of a willful violation of the Song-Beverly Act, civil penalties should not be included in the amount in controversy calculation. Mot. at 11-14.  Plaintiffs rely on a number of cases that include underlying complaints requesting civil penalties "up to twice the amount of [] actual damages," which are unlike Plaintiffs' complaint and moving papers that repeatedly aver Plaintiffs are "entitled" to a civil penalty twice the amount of their underlying, actual damages.  Compare, e.g., Echemendia, 2020 WL 7311348 (C.D. Cal. Dec. 11, 2020) ("Plaintiff's sole allegation remotely inferring willfulness is that Subaru misrepresented it would cure the Vehicle's defects") with Compl. ¶¶ 30, 36, 39 (containing descriptions of Defendant's "willful" failure to comply with the Song-Beverly Act and repeated claim that "Plaintiffs are entitled to a civil penalty of two times Plaintiffs' actual damages") and ECF No. 10, Joint Status Report, at pg. 4 (stating if the standard double civil penalty under the Song-Beverly Act does not apply, "Plaintiffs will [otherwise] seek a penalty in the amount of two times [their] damages.").  The Court is persuaded by Carrington and the Verastegui cases cited by the Defendant, which support the inclusion of a civil penalty doubling the actual damages in the amount in controversy calculation; these cases are more analogous to the claims in Plaintiffs' Complaint and the evidence before this Court than any cited by the Plaintiffs.

See Carrington, 2024 WL 1745038 at *3-4 (relying on Sanchez v. Monumental Life Ins. Co., 102 F.3d 398 (9th Cir. 1996) and Chavez v. JPMorgan Chase & Co., 888 F.3d 413 (9th Cir. 2018) to support the application of the civil penalty in determining the amount in controversy); Verastegui v. Ford Motor Co., No. 19-cv-04806, 2020 WL 598516, at *3 (N.D. Cal. Feb. 7, 2020) (recognizing "courts in this district have varying views as to whether the maximum civil penalties should be considered when deciding the amount in controversy," but finding the penalty doubling the actual damages applied because "it is what Plaintiff put in controversy."). Using the underlying actual damages calculation most favorable to Plaintiffs, $60,809.63, the inclusion of the civil penalty Plaintiffs claim they are entitled to brings the amount in controversy to nearly $122,000. This number well exceeds the requisite jurisdictional threshold, without considering attorneys' fees or other damages requested by Plaintiffs. Based on the evidence before the Court, Defendants have met their burden establishing by a preponderance the amount in controversy exceeds $75,000.

### III.   ORDER

For the reasons set forth above, the Court DENIES Plaintiffs' Motion to Remand.

IT IS SO ORDERED.

Dated: September 30, 2025

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE